UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE GETTLEMAN

MAGISTRATE JUDGE KIM

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>OLALEKAN JACOB PONLE,<br>   also known as "Mark Kain" and "Mr. Woodbery," | Case No. 20 CR 318<br><br>Violation: Title 18, United States Code, Section 1343<br><br>**INDICTMENT** |

**FILED**
JUL 15 2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### COUNT ONE

The SPECIAL JANUARY 2019 GRAND JURY charges:

1. At times material to this indictment:

    a. Defendant OLALEKAN JACOB PONLE ("PONLE"), also known as "Mark Kain" and "Mr. Woodbery," resided in South Africa and Dubai, United Arab Emirates.

    b. Individual A resided in Palm Beach Gardens, Florida.

    c. Individual B resided in Jupiter, Florida.

    d. Individual G resided in Frankfort, Delaware.

    e. Victim Company A was located in Chicago, Illinois; Victim Company B was located in McLean, Virginia; Victim Company G was located in Kansas City, Missouri; Victim Company H was located in Great Bend, Kansas; Victim Company I was located in Southfield, Michigan; Victim Company L was located in Santa Ana, California; and Victim Company M was located in Tampa, Florida (collectively, the "Victim Companies").

f.  Bitcoin is a type of cryptocurrency, or virtual currency. Bitcoin is not issued by any government, bank, or company; it is instead generated and controlled through computer software operating on a decentralized peer-to-peer network. Bitcoin transactions are recorded in the Bitcoin blockchain. The blockchain is a distributed public ledger, run by the decentralized network, containing an immutable and historical record of every bitcoin transaction. Bitcoin is stored in wallets, which can be either hardware- or software-based.

g.  PONLE used and controlled the bitcoin wallet 16AtGJbaxL2kmzx4mW5ocpT2ysTWxmacWn ("the 16AtGJ BTC Wallet"), which was serviced by Blockchain.com, headquartered in Luxembourg.

h.  Individual A used and controlled the Gemini Trust cryptocurrency exchange account ending in 9581 ("the 9581 exchange account").

i.  Individual B used and controlled the following accounts:

   i.  The Suntrust Bank business checking account ending in 8208, doing business as a company name that was the same as a Victim Company B supplier (the "8208 account"); and

   ii.  the Bitcoin hardware wallet assigned device number 6F1AB49904EC49D622A5D9B1("the 6F1AB BTC Wallet");

j.  Individual G used and controlled the PNC business checking account ending in 0495 doing business as a company name that was the same as Victim Company H (the "0495 account").

2

k. The Federal Bureau of Investigation used and controlled the business checking account ending in 4784 (the "4784 account"), which was held in Illinois.

l. Unbeknownst to PONLE, an individual who was an online covert employee (OCE) of the FBI was communicating with PONLE.

2. Beginning no later than in or around January 2019, and continuing until in or around September 2019, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OLALEKAN JACOB PONLE,
also known as "Mark Kain" and "Mr. Woodbery,"

defendant herein, and others known and unknown, knowingly devised, intended to devise, and participated in, a scheme to defraud and to obtain money from the Victim Companies and other businesses by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

3. It was part of the scheme that PONLE and other co-schemers gained unauthorized access to email accounts used by the Victim Companies and other businesses. After accessing these email accounts, PONLE and other co-schemers used the compromised email accounts or separate fraudulent email accounts to communicate with employees from the Victim Companies or companies doing business with the Victim Companies. The purpose of the emails was to induce employees to wire money to certain bank accounts by falsely representing that the wire transfers were related to legitimate business expenses. In reality, the requests for wire transfers were not related to any legitimate business expense. Instead,

PONLE had co-schemers, including Individuals A, B, and G (collectively, the "Money Mules"), as well as the OCE, create bank accounts for the purpose of receiving the fraudulent wire transfers from the Victim Companies and the other companies. PONLE then instructed the Money Mules to send him the majority of the fraud proceeds from the fraudulent bank accounts, including sending him proceeds via Bitcoin.

  4. It was further part of the scheme that PONLE and his co-schemers gained unauthorized access to email accounts used by Victim Companies.

  5. It was further part of the scheme that PONLE instructed Money Mules and the OCE to open bank accounts in the names of both existing and phony businesses in exchange for payment.

  6. It was further part of the scheme that PONLE and his co-schemers sent phony emails purporting to be from employees of the Victim Companies or from companies doing business with, or purporting to do business with, the Victim Companies. Certain phony emails requested wire transfers be made to certain bank accounts, opened by Money Mules and the OCE, at PONLE's direction. For example, PONLE and his co-schemers caused the following phony emails to be sent:

    a. An email sent on or about January 9, 2019 that falsely purported to be from an employee of Victim Company B requesting a wire transfer to a supplier of Victim Company B;

b. An email on or about February 11, 2019 that falsely purported to be from a Victim Company A employee requesting a wire transfer to a Victim Company A subsidiary;

c. An email sent on or about March 1, 2019 that falsely purported to provide new bank account information for Victim Company H;

d. Emails sent on or about June 12, 2019 and June 19, 2019 that falsely purported to be from a company that disbursed dividends for Victim Company M requesting a wire transfer of Victim Company M funds; and

e. An email sent on or about September 6, 2019 that falsely purported to be from an employee of Victim Company I requesting a wire transfer from Victim Company I.

7. It was further part of the scheme that, in order to induce Victim Company employees and other companies doing business with the Victim Companies to wire money to a fraudulent bank account, PONLE and his co-schemers sent emails to Victim Company email accounts or from Victim Company email accounts that were often drafted to appear like prior, legitimate emails requesting wire transfers. For example, some of the fraudulent emails and attachments sent by PONLE and his co-schemers had some or all of the following characteristics:

a. the name of a legitimate recipient of a scheduled wire transfer;

b. the correct amount of a scheduled wire transfer;

c. the correct beneficiary account routing number for a legitimate recipient of a scheduled wire transfer; and

5

        d.     the name of a legitimate business as beneficiary of a wire transfer.

        8.     It was further part of the scheme that the fraudulent emails sent to or from a Victim Company email address contained a fraudulent beneficiary account number to receive the wired money. In reality, this account was created by and controlled by one or more Money Mules.

        9.     It was further part of the scheme that, in order to conceal his identity, PONLE used the alias "Mark Kain" to contact and recruit Money Mules in the United States.

        10.     It was further part of the scheme that, in order to conceal his identity and location, PONLE used encrypted messaging applications to communicate with Money Mules and other co-schemers.

        11.     It was further part of the scheme that, in order to conceal his identity and location, PONLE used voice over internet protocol applications, which made it appear as if he was using a United States-based telephone number when communicating by telephone with Money Mules in the United States.

        12.     It was further part of the scheme that PONLE instructed the Money Mules to convert the fraud proceeds to Bitcoin and to send the majority of the fraud proceeds from the fraudulently created bank accounts to the 16AtGJ BTC Wallet that PONLE used and controlled.

        13.     It was further part of the scheme that PONLE used the fraud proceeds for his own benefit.

14. It was further part of the scheme that PONLE and others misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, acts done in furtherance of the scheme and the purpose of those acts.

15. On or about January 17, 2019, in the Northern District of Illinois, Eastern Division, and elsewhere,

OLALEKAN JACOB PONLE,
also known as "Mark Kain" and "Mr. Woodbery,"

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely an interstate wire transfer of approximately $188,191.50 from the account of Victim Company B, held in New York, New York processed through the Federal Reserve System, to the 8208 account held in Nashville, Tennessee;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 14 of Count One of this indictment are incorporated here.

2. On or about January 17, 2019, in the Northern District of Illinois, Eastern Division, and elsewhere,

OLALEKAN JACOB PONLE,
also known as "Mark Kain" and "Mr. Woodbery,"

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, interstate internet communications from Florida to a location outside of Florida related to the transfer of approximately 33.13030959 Bitcoin from addresses associated with the 6F1AB BTC Wallet to PONLE's 16AtGJ BTC Wallet;

In violation of Title 18, United States Code, Section 1343.

## COUNT THREE

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 14 of Count One of this indictment are incorporated here.

2. On or about February 15, 2019, in the Northern District of Illinois, Eastern Division, and elsewhere,

OLALEKAN JACOB PONLE,<br>
also known as "Mark Kain" and "Mr. Woodbery,"

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, interstate internet communications from Florida to a location outside of Florida related to the transfer of approximately 340 bitcoin from the 9581 exchange account to PONLE's 16AtGJ BTC Wallet;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 14 of Count One of this indictment are incorporated here.

2. On or about February 26, 2019, in the Northern District of Illinois, Eastern Division, and elsewhere,

OLALEKAN JACOB PONLE,
also known as "Mark Kain" and "Mr. Woodbery,"

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, a text message to Florida from a location outside Florida that was from PONLE, using the alias "Mark Kain," to Individual B, that stated, "I have a new name I need you to work on ASAP[.] [Victim Company H]";

In violation of Title 18, United States Code, Section 1343.

## COUNT FIVE

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 14 of Count One of this indictment are incorporated here.

2. On or about March 4, 2019, in the Northern District of Illinois, Eastern Division, and elsewhere,

> OLALEKAN JACOB PONLE,
> also known as "Mark Kain" and "Mr. Woodbery,"

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an interstate wire transfer of approximately $415,000 from the account of Victim Company G, located in Kansas City, Missouri to the 0495 account, held in Wilmington, Delaware;

In violation of Title 18, United States Code, Section 1343.

## COUNT SIX

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 14 of Count One of this indictment are incorporated here.

2. On or about June 12, 2019, in the Northern District of Illinois, Eastern Division, and elsewhere,

OLALEKAN JACOB PONLE,
also known as "Mark Kain" and "Mr. Woodbery,"

defendant herein, for the purpose of executing the scheme knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email to Florida from a location outside of Florida that was directed to Victim Company M requesting a $19,292,690.30 wire transfer to a bank account ending in 6552;

In violation of Title 18, United States Code, Sections 1343.

## COUNT SEVEN

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 14 of Count One of this indictment are incorporated here.

2. On or about June 19, 2019, in the Northern District of Illinois, Eastern Division, and elsewhere,

OLALEKAN JACOB PONLE,<br>
also known as "Mark Kain" and "Mr. Woodbery,"

defendant herein, for the purpose of executing the scheme knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email to Florida from a location outside Florida directed to Victim Company M requesting a $19,292,690.30 wire transfer to a bank account ending in 1295;

In violation of Title 18, United States Code, Sections 1343.

## COUNT EIGHT

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 14 of Count One of this indictment are incorporated here.

2. On or about September 6, 2019, in the Northern District of Illinois, Eastern Division, and elsewhere,

OLALEKAN JACOB PONLE,
also known as "Mark Kain" and "Mr. Woodbery,"

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an email to Michigan from a location outside Michigan that was directed to Victim Company I requesting a wire transfer to the 4784 account;

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The SPECIAL JANUARY 2019 GRAND JURY further alleges:

1. Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in this indictment, defendant PONLE shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY